Good morning, Your Honors. I'm Kurt Cruz here on behalf of the Defendant and Appellant Francisco Barrios-Siguenza. May I please the Court? I've spoken recently to Mr. Barrios, and he sends his regrets that he's unable to be here, but he is indeed very interested in today's proceeding, and he wants both the panel and the government to know that. I'd like to reserve three minutes in rebuttal, if I may. Your Honors, there's a problem with the jury instruction in this case, specifically count three. It constructively amends the indictment. That requires reversal of this case in a new trial. The indictment in this case specifically charged that Mr. Barrios did intentionally and forcibly assault Agent Cook by hitting him in the mouth. Throughout this case, the entire government's theory was just that, that Mr. Barrios, while he was being apprehended in the desert in Arizona, wheeled around and struck Agent Cook in the mouth. However, when it came time to settle jury instructions, the jury instruction on the assault charge count three added additional conduct, that being attempted to physically injure and also threat. Defense counsel objected at the time of those instructions. At that point, evidence is in. Instructions are being settled. But the court instead did send back the instructions saying, you can find him guilty of forcible assault by finding that he intentionally struck another, okay, but also you can find him guilty if he attempted to injure, or you can find him guilty if he made a threat. Of what significance is it that counsel did not make the constructive amendment objection specifically at that time? It does affect potentially our standard of review. It may affect your standard of review, Your Honor, but counsel did make the specific objection at the time the instructions were settled. He didn't make the words, but he essentially said what you're saying. Is that what you're pointing to? That's exactly right, Your Honor. At ER 40 is where the trial counsel who's present today specifically says, with regards to the 8.4 and 8.3 instructions, the ones we're talking about, I don't believe that we need the willfully attempts to inflict injury on another, that second part of the language, because there's no accusation that he attempted to do anything. The accusation is that he actually did forcibly assault and that he actually did intentionally strike. So we can talk about, well, what's accusation versus indictment. I would submit they're the same. As I read that passage, there's a difference between saying to the district court, you are constructively amending the indictment impermissibly, and I don't think we need these words. In terms of bringing the issue to the district court's attention so the district court knows what it's considering. Well, I think that the trial counsel did effectively bring it to the court's attention. Were the magic words said, hey, you're constructively amending the indictment by doing this? No. But again, as the panel is fully aware, when you're in trial, you are making snap decisions. You're objecting where you see there may be error. And I think trial counsel in this case did appropriately object. Certainly the court acknowledged that somebody got the note in from the jury that they couldn't figure out why are they worried about threat. This is about a case involving hit in the mouth. I think the court felt that it was appropriate to put in the whole instruction because it was the model instruction. Well, that's absolutely true. It includes that phrase. Instead of striking out the inapplicable part, as Lise was arguing. Well, the point that Your Honor made initially was that there was no evidence throughout this case of attempt or threat. Nowhere in the record could I find that the word threat was used in any part of the actual testimony. So if that's the case, then what would the jury have latched on to to convict him where there's any reasonable possibility they would have convicted him of the threat and the attempt, those kinds of words? I think there was some reference in trial. And I looked for it in the record. I was able to find it of agents who work in the capacity such as that of Agent Cook are constantly feeling the threats of their job and that type of thing. But obviously, that's not the type of threat we're talking about. Although not relevant to the sufficiency question, they seem to have disbelieved the Rock story because they didn't find that he assaulted him with a rock. And so it could be or could it be that after the supposed rock, then he stood up and the agent seemed to think, seemed to feel somewhat threatened at that point and then fell back, tried to pull his leg and so on. In other words, after the rock, after what he said was a threat, hitting him with a rock, there was then more that went on. I think what Your Honor is referring to is the testimony that Agent Cook had where he was struck in the mouth of the rock, he stumbled back, tripped on some other rocks, looked up, and I think the testimony was I saw Barrios or the undocumented immigrant coming at me. And that could be the threat. That could potentially be the threat there. But the problem But that wasn't charged. That's exactly right, Your Honor. The problem and the purpose of the indictment is to give defense counsel and the defendant himself notice of what the charges are against him. In this case, the only charge was forcibly attacking or hitting with a rock. If defense counsel had known that attempt to injure or threaten was on the table That count didn't say anything about a rock. It just said hitting him in the mouth. That's correct, Your Honor. The first two counts contained the deadly or dangerous weapon. That was the rock. And then the second count was a serious bodily injury, both not guilties on those counts. Leaving aside the constructive amendment issue to a similar but slightly different question, the real problem was mens rea as one of the problems that you highlighted. Why didn't the, to the extent that that's the issue in the case, why didn't the curative instruction that referenced intent solve the problem? Well, when the jury came back with the question of what makes a threat, define what makes a threat, the district court called the lawyers in and says, I'm going to give the blacks legal definition of threat. And, indeed, sent back that blacks legal definition of threat, a communicated intent in some other language. And that doesn't cure, Your Honor, because, as this Court may know, the model instructions that came out the same exact month of this trial, December 2012, took out makes a threat and substituted in intentionally threatens another. And the reason is that there was no mens rea. Right. I agree with you on that. But the curative instruction does contain an intent element, a communicated intent. Tell me why that's not enough. I don't think it's enough, Your Honor, because if this Court or the promulgating body of this model jury instructions thought that was appropriate, it would have used the blacks legal definition. I'm sorry. It's a different intent. There's an intent to communicate. I mean, this case may be illustrative. Apparently, that's assumed for a reasonable person, when Mario stood up and, according to the agent, he seemed to be communicating an intent to threaten him. But the question is, did he intentionally communicate a threat to intentionally hurt him? There's two intents. That's exactly right, Your Honor. And what the model jury instruction comes back with is intentionally threatens another, puts that intentionally, highlights it prior to the issue of threat. And in this case, the jury instruction did not have that mens rea. That's fatal error and requires a new trial as well. The government argues that, well, this doesn't matter because the U.S. attorney argued throughout closing evidence that it has to be intentional conduct. And as was pointed out in the prior argument, arguments of lawyers are not facts. They're not evidence. They're not law. So that argument holds no weight. He didn't argue anything about a threat because nobody thought that threat was the question. That's absolutely correct, Your Honor. I think that the discussion on the record during the course of the jury question, they come back with a question regarding what constitutes making a threat. Judge Burry, I don't know where they get threat in this case, but you know either it's the U.S. attorney. I don't either. Judge Burry. Well, nobody thought threat was in the case. And, in fact, if the jury hadn't come back with a question, it would seem to me that it might be harmless error. But the jury asked about it. Well, it certainly does highlight the fact that the jury was considering the issue. There's no doubt about it. But it's a curious thing where everybody concedes that there's no evidentiary support in the record, at least. Perhaps you could find something here or there, I suppose, of reference. But there's no real evidentiary support for the threat. And so the jury couldn't have really convicted on the threat. Getting back to Judge Fisher's question. But somewhere the jury is latching on to the issue of threat. And as we know from the Salinas case, which was cited in the record. But also, and this goes back to the constructive amendment problem, it isn't so much that there wasn't a threat as that it wasn't charged. In other words, the reason everybody thought there was no threat at issue is because that wasn't what the charge was. That's exactly correct, Your Honor. It wasn't in the indictment. The defendant had no notice. The government's theory of the case was never attempt or threat. It was that he actually smacked him in the mouth with a rock, something Mr. Barrio said he absolutely did not do. So the amendment had the indictment has been amended. That requires reversal. But the Court may not even need to get to a new trial in this case because we submit that there's been a violation of due process rights when a number of other persons that were apprehended with Mr. Barrio's in the desert that night were simply deported. I really don't understand that argument. I mean, the case law is that it has to be in bad faith and that there has to be some evidence that they would have said something positive, and there's neither of those things. Well, the defense counsel was never given the opportunity to investigate what these witnesses may or may not know. And I-213s were requested, well, a month before trial. And defense counsel didn't get the I-213s until the Friday before trial. That's not enough time. That's not a Brady argument. What argument is it? Well, it's that the defense ---- It's not a Brady argument because there wasn't any evidence that anything exculpatory was withheld. So what's the argument? Well, the argument is, Your Honor, that the defense counsel, even though they timely asked for this information to investigate their case, how could they ever go find out what these people know? And how can the government avow to the court that says, well, these witnesses don't know anything? Well, how can they say that when no one interviewed them? But what's the constitutional argument? I mean, in general, we don't have discovery in criminal cases except we have Brady and we have rules and we have ---- Is any rule violated? Is Brady violated? Is Jenks violated? What's the problem? Well, the problem is that the defendant has to have an opportunity to adequately defend their case. And they were not given even rudimentary information, such as the whereabouts or the identities of these other witnesses. And because of that, they could not prepare their case. And because of that, their due process ---- And that violation rules something or other? We're basing that argument on the Carmen Leal case and Brady, that even though the Carmen Leal case does have language that ---- Which case? I'm sorry? Which case? The Carmen Leal case. Yes, that's the one that says you have to have bad faith and evidence of exculpatory evidence. And what we're submitting is that the rule should be that when the government is seasonably asked for information concerning the identity of potential witnesses, they need to hand that information over so the investigation can be undertaken. And you have no case support? No, ma'am. You're down to about two minutes. Do you want to reserve? I'll reserve. All right. Thank you very much. You're up in the United States. Good morning, Your Honor. May it please the Court? The microphone will close. Thank you. Is that better? Yes. May it please the Court? I'm Christina Cabanillas from the District of Arizona on behalf of the United States. And we would respectfully ask this Court to affirm the conviction. And I'd like to start with a question Judge Berzon asked, because I think that there's a premise that the defendant's suggesting, which has, unfortunately, altered the prism through which this Court needs to see the case, and it's important that that get clarified. We had three counts that we charged in this case dealing with the assault against the victim, Agent Cook. Count one and count two and count three, the assaults were all the same in terms of the jury instructions, with the exception of one thing. Count one charged that the defendant, the jury needed to find that the defendant used the rock in a way that it would be a deadly weapon. Count two said it caused bodily injury. Count three said the defendant made physical contact. By acquitting on counts that the defendant made physical contact is the difference in count three. By hitting him in the mouth. That's what we alleged, yes. And so what I'm trying to suggest is the acquittal on counts one and two do not show that the jury found that a rock was not used. And here's why. Because you could find, a jury could find that, you know what, even though he cracked him in the face with the rock is what the agent said, the defendant did, that, you know what, we're not going to find that this was used as a deadly weapon because the agent had a lip injury. We're not going to find it was used to that extent. The jury could also found, you know, even though count two says it needs to be bodily injury, there was testimony that he just hurt his lip. It wasn't a serious injury according to some of the testimony. And so then the jury finds. But we do find he made physical contact. So the premise that by acquitting on count one and count two somehow proves that the jury found no rock was used, I disagree with that premise. I think that the evidence supports that the jury could have still found that he hit him in the face with the rock, but that he did so and made physical contact, but not the bodily injury or the. It doesn't matter because we don't look at the pieces. Correct. But I think the defendant has. I was going to say I think the defense has unfortunately succeeded in confusing the court to think that the acquittal on count one and two somehow suggests that they never found that he used a rock. I disagree with that strongly because the way that the case is argued, too, you have the defendant who's claiming that he did. But that's not the question with regard to the other two issues. Because with regard to other two issues, the instruction issues, the question of the problem is whether they could have done this. And so, yes, count three, and the instruction. And I'd like to turn to that. As Judge Thomas asked, there's an issue with the men's ray. And what happened in this case is, I submit to you, it is plain error review for this reason. And I do think the magic words need to be used in order to preserve an objection. The defendant objected to the count three forcible assault instruction, which this Court knows has three alternative definitions of forcible assault. The defendant said, you know, and I think, Judge Thomas, you were touching on this, that the defendant said, I think we should just take out the second one and the third one and just have the first one because the evidence is insufficient. That is not the same as saying the amendment, the indictment was constructively amended, nor is it the same as saying there's a Costa Sierra error with the makes a threat language. So I do believe that this is review for plain error. And I'd like to explain why it is that the error that occurred under Costa Sierra was not plain, did not violate the defendant's substantial rights in this case. First, we have, as Judge Thomas noted, the judge's answer to the jury's question, makes a threat. What is makes a threat? And the judge stated that it means to communicate an intent to inflict bodily injury excuse me, bodily harm. Now, in a Costa Sierra, the Court said, you know, makes a threat, we don't think that's to assault. And I think the language No, it didn't say that. It said intent to make a threat. That's quite different. Intentionally threatened is how the jury instruction was modified. Intentionally threatened is different. But intent Than communicate an intent to make an assault. And there's lots of case law about that, I mean, outside of this area. I guess I'm just referring to the language this Court used in footnote 3 of a Costa Sierra. All right. But it didn't say that didn't communicate an intent to assault. It said it didn't communicate an intent to threaten. Actually, Your Honor, footnote 3 does say that we think that the instruction the requisite intent is intent to assault. It does say that in footnote 3. What I'm suggesting, though, is the language that the district court conveyed in response to the jury's question was adequate to cure and tell the jury that intent was required. And the closing arguments, it's not like we're suggesting that that somehow substitutes for an answer by the Court. But why aren't the facts of this case exactly illustrative of the difference between communicating an intent to assault and intending to communicate an intent to assault? Did you repeat that again, Your Honor? I'm sorry. Why aren't the facts of this case potentially exactly illustrative of the difference between communicating an intent to assault and intentionally communicating an intent to assault? Your Honor, I'd submit that If this person, in fact, stood up and the agent reasonably thought that he was standing and conducting himself in a way that was threatening an intent to assault, but in fact, Varios was not intentionally doing it. I think what the impediment is to that conclusion is that they found he made physical contact. I'm not asking what he did. I'm just using it as illustrative of the difference between the two, why the instruction was wrong. Actually, I think, again, the jury instruction error was cured by the answer because the Court conveyed to the jury that it required intentional conduct. And that's the essence. And then the closing arguments also added that. No, they didn't. He said that they had to have he had to communicate an intent to assault, but not intentionally communicate an intent. Well, actually, it says, quote, a communicated intent, as if it had already been communicated, a communicated intent to inflict bodily harm. Right. And I think combined with, again, it's very important that the jury instruction required the jury to find the defendant made physical contact. So I think they resolved the credibility question. And as the government noted below, it's a he said, he said type of case because this happened out in the desert underneath a brush where it's very brushy. No one else was around to hear or see it, either agents or the other aliens who were apprehended in the area, as the evidence shows. Did he say communicated an intent to inflict bodily harm on another? Is that what he said to the jury? My quote that I have from my notes is, a communicated intent to inflict bodily harm, which then joins the rest of the instruction, coupled with an apparent ability to inflict injury on another, which causes reasonable apprehension of bodily harm. I think if you look at all of the three alternative definitions, there was sufficient evidence for the jury to find them. And this Court's model instruction contains all three of those alternative ways a jury can find a forcible assault, which was charged in the indictment. Can I come back to something you said earlier? You said that the reason why his, why this was plain error was because he, the defense lawyer did not, objected with regard to the evidence, but not, it wasn't a constructive amendment. What he actually said was that, I don't think we need the willful intent because there was no accusation that he attempted to do anything. The accusation is that he actually did forcibly assault, and that he intentionally did it. And he did intentionally strike. So it was specifically about the indictment. But I disagree, actually, I guess. I guess when it. What's the accusation? Well, when it comes down to it, it's not an allegation that we didn't have sufficient notice, which I think is what that stands for. But forcible assault is charged. So I don't think you need to be more specific in terms of. But that's a different issue. We're going to challenge all the other. I'm just talking about whether this is plain error, whether that was an adequate objection to raise a constructive amendment question. I don't. It seems exactly about that. What else is it about? I guess I would. I guess I would disagree that that was adequately raised in order to preserve what is being claimed on appeal. And again, things sometimes morph from district court to appeal. And I think this has morphed into a claim, an Acosta-Sierra error claim, that because makes a threat wasn't further defined, that that constituted error. That jury instruction argument is plain error. Whether or not it constructively amended the indictment, whether you think it's plain error or preserved, there was no constructive amendment of the indictment. Because it was charged, it was proved the same way. Forcible assault was charged. And as this Court knows, jury instructions can further define what a term of art means. For example, if we charge that a defendant possessed with intent to distribute, we further define what possession means. We don't put down constructively or actively. You know, we can use the term of art. And that provides sufficient notice. There's a jury instruction this Court crafted. It's got three parts. There are no brackets around the parts. And when there's brackets, that could suggest to people that you need to take one out  I think ---- Sotomayor, I think that's true and would be true if by hitting him in the mouth could be regarded as superfluous. But it wasn't superfluous. It was a ---- it seems to me a specification of in what way, in other words, of the three possible ways you could forcibly assault. Yes, I agree. Hitting him in the mouth is actually doing it as opposed to attempting or threatening it. And moreover, it was essential because there had to be physical contact, and that was the physical contact that was alleged. But that language, though, sufficiently conveyed that we're charging a forcible assault. We're charging an assault by the fact that the agent testified that the defendant cracked him in the face with a rock. Now, all three of those alternative definitions support that the jury could have found and we submit did find that that's exactly what happened, but they just didn't find that it was serious enough to constitute assault with a deadly weapon or that there was bodily injury. But they found that. And we look at all three definitions. There's a forcible assault where one person intentionally strikes another. They could certainly find that from the testimony. Or that willfully attempts to inflict injury on another. Again, we're talking about the assault portion. The touching or the act of actually making physical contact is covered by another part of the instruction. They can also find that he makes a threat coupled with the apparent ability to inflict injury on another. Again, with the modified version of communicated intent to inflict bodily harm, they can find that, too, based on the evidence. I do not believe that the evidence supports that there's not enough evidence for all three of these. And, you know, I think there's a suggestion that everybody's conceding below that there's no evidence of an assault. I think what the question isn't whether there's adequate evidence. The question is, is it a constructive amendment? Because he wasn't charged. He was only charged with doing it by hitting him in the mouth, which is one of the three versions. No, it's not a constructive amendment. Because forcible assault is in there, too. And forcible assault is further defined by jury instruction. And that's sufficient to provide notice. And there was no constructive amendment because all those definitions existed when we tried the case. So for that reason, there's no modification that's occurring at trial. What we're having is three alternative ways to have the jury find whether or not this was constructive. Let's suppose, for example, that there had been a threat communicated somewhere, a verbal threat, hypothetically. But you only charged him with, as you did charge him, assaulting with the rock, et cetera. Under those circumstances, if the evidence is in the record, we would say, well, look, the defense wasn't on notice because there was no threat in the case, you know, right? And it could have convicted him of threat. And so, you know, that's one way we could look at constructive amendments. And that's one what I would do here except for the fact that the jury comes back and asks about the threat. I mean, I can go through the thing, you know, look, it didn't make any difference. You know, it's not constructively because he was charged with hitting with the rock, indicted with that, instructed, and there's this superfluous thing about threats at the end. And everybody concedes there's no evidence of threat. But then the jury comes back and asks about it. So what do you make of that? I think what I make of it is I would inquire, how is it the defendant would have changed the way he presented his case? I'm sorry. How would the defendant have changed the way he would have presented the case? We had the defendant who testified, I did not strike the agent. As a matter of fact, he claims that the agent grabbed him by his backpack that he claimed he had, which other witnesses testified. Well, I suppose he would have also said, and I didn't threaten him. And then the attorney said, I didn't. He did say I didn't. The prosecution would have either said he did threaten him or he didn't threaten him. I mean, there is this hypothetical way they could have found a threat. And the – but it was never joint issue about because it was never charged. I think that that's all subsumed in the forcible assault. He's denying he made a forcible assault. He's denying that he did anything. By hitting him in the mouth. Yes. Because that's all he was charged with.  he's threatening, too. He said below, I never picked up a rock. I never put my hands on the agent, threatened him at all. I mean, in terms of the action. But he didn't say, and I never said I was going to, or I never – when I stood up, I had no intent to assault him. I did not. He never said that because there was no reason to say that. Yeah, he does. Actually, he did. There's testimony down below, and I don't have the specific site right now, but I recall that the defendant was asked, did you ever do what the – you know, basically hit him with a rock, did you ever – there's some language to some effect suggesting did he do anything to the agent other than the rock. And his testimony was, no, I was pulled down by my backpack, my face hit the ground, and I didn't use a rock. I didn't do anything to the agent. There's some testimony where he says, when I'm facedown, I slightly lift my head and I feel an impact. But that was never argued to the jury as being the reason for the agent's fat lift. Of course. And it wasn't argued to the jury that he was – that he had threatened him. That's the problem, because nobody would ever charge him with it. It was an all-or-nothing type of a defense in terms of either he did it or he didn't. We're parsing here. Let's – I'd like you to consider what the judge said. When the note comes out, he reads the note questioning about what makes a threat, and then he says, I'll give the Black Law Dictionary definition, a communicated intent to inflict bodily harm on another. I don't know where they get threat in this case, Ms. DeMaris. I don't either. The judge is smack in the mouth, or it's nothing. It has to be a smack in the mouth. There's no threat in the judge's mind. But you're saying, oh, well, the threat and the attempt are all just part of the smack in the mouth. The judge backed off, by the way, after that. If you're talking about in response to the jury's question, he says, well, you know, they're asking it. There must be something, too. Exactly. So he is considering. But that was his reaction. That's the judge's reaction as to what he'd heard about the case and what he knew about the indictment. He didn't see where the jury would even get into that part of what you say are just different ways of alleging the actual smack in the mouth. Because I think what you have is the jury is looking at the instruction and analyzing whether or not this occurred. Right. Wants to get a little bit more information about what makes a threat. Right. And then when they get the communicated intent to inflict bodily harm definition, and, again, we never know exactly why a jury asks a question. It could be one juror. It could be all jurors. You never know. They come back and they convict. And I submit to you there was evidence, sufficient evidence, for them to find that. Wait a minute. Wait a minute. The judge says one more thing. There was no, Ms. Marquez, there was no evidence that he communicated a threat or that it was a threat. The court. True. No evidence. So, now, I'm not following your argument. As long as those hooks are in the jury instruction, and even though the court can say that there's no evidence that there was a threat, communicated or actual or whatever, and yet the jury comes back after asking about threat, they convict. I think. How can you draw an inference that, oh, it was all about smack in the mouth? I think that this Court also has to examine and look at how it was argued. And I don't think that because if they found that there were, maybe they relied on the third alternative definition instead of the first two, there's evidence to support that. And the district court, I don't think, was making a finding that as a matter of law the jury could not find that. Is your argument essentially a harmless error argument? No, it's not. Right? You're not saying that if this was, well, first of all, it's literally a constructive amendment, then it couldn't be harmless. But is it a harmless? Again, I don't believe there's a constructive amendment. I understand. But are you arguing harmless error? To the extent, I think I subsumed it all together because I thought the jury instruction argument was similar to the constructive amendment argument. And you'll see in the brief I argue everything's like not plain error or harmless. But I want to know, are you – is your ultimate position with regard, say, to the mens rea, that it's harmless or that it wasn't wrong? The mens rea was error under Acosta-Sierra, but it was cured by the district court's response to the jury question and the way the case was argued. So we're arguing the error is harmless or not plain. We're also arguing that the indictment was not constructively amended because the defendant had notice of the forcible assault, and that was just further defined in the jury instructions. So altogether, any error that occurred was harmless. We would submit the defendant did have sufficient notice, and that's what you're looking at when it comes to an indictment, about what he needed to defend against. And he just claimed, I didn't do it. So you're not saying the jury didn't find, based on the threat, we should just assume that there was no way they could have done that. You're saying even if they did, there wasn't a problem. Correct. Okay. And, you know, I know that my time is up, but I – there were a couple more points the Court got to when it came to Brady. Can I maybe have just one more minute to address that? Well, we're running short on time, but I'll give you 15 seconds. Okay. Brady. No problem, because the aliens were not in a position to see the evidence, to see the assault. It's undisputed, frankly, that that's what the evidence showed. And I think the Court recognized that unless the government is in possession of that knowledge and then knowingly deports somebody who has exculpatory evidence, that's leal de carmen, and that's not what we have here. And the last thing is the remedy. If this Court finds that this – that there was error that's reversible in this case because the defendant has been removed from the United States, this Court has found that in such circumstances, it should apply the remedy that's set forth in Aguilar-Reyes, and that's the one we cite in our brief. And it's based on Rule 43, because the defendant is no longer in the United States. He cannot be resentenced or retried in his absence. And so that's the reason for that. So I just wanted to add that as well. Thank you very much. Thank you. I'd like to address a couple points that were made by counsel. The fact that – What about the remedy question, too, whatever else you're doing? Okay. The fact that counsel says that forcible assault is in the indictment is enough to encompass all those things, meaning the attempt and also the threat, is really fallacious. The indictment has to specify the conduct, because if forcible assault is enough to encompass it, why does the indictment specifically say, did intentionally and forcibly assault Agent Cook by hitting Agent Cook in the mouth, thus making physical contact? If it doesn't specify the conduct, then the indictment would be insufficient and subject to a motion to amend the indictment or whatever it may be. But the indictment in this case was amended by the jury instruction, and that requires reversal. Headings are not enough in an indictment. The mere fact that forcible assault is mentioned is not enough. The mere citation to a statute in the indictment is not enough. So with that regard, I think this case goes back for a new trial. And relative to the issue of the Aguilar case, Mr. Barrios is able and willing to attend trial. He wants a new trial. The government has powers to parole him back into the United States to attend that trial. He wants his day in court with a fair jury instruction to contest this. So a new trial is warranted, and the remedy of affirming the conviction without prejudice is not appropriate in this case. If there's any more questions, I will rest. Well, thank you both for your arguments, and we especially appreciate knowing you've come from Arizona to go across the bridge here and argue in front of law students today. The case just heard will be submitted for decision.
judges: Thomas, Fisher, Berzon